IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

EMILY P.,[1]
    Plaintiff,

        v.                              Civil No. 3:20-cv-00368 (MHL)

KILOLO KIJAKAZI,[2]
    Defendant.

## REPORT AND RECOMMENDATION

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of Emily P. ("Plaintiff") for disability insurance benefits under the Social Security Act (the "Act"). Plaintiff was under the age of eighteen at the time of her benefits application but is now twenty-one years old. (R. at 25.) She previously worked at a restaurant, a dog daycare, and at Walgreens. (R. at 71-74.) Plaintiff asserts that she is disabled because she suffers from fetal alcohol syndrome, borderline intellectual functioning, low processing speed, memory problems, attention deficit hyperactivity disorder ("ADHD"), social anxiety disorder, depression, and posttraumatic stress disorder ("PTSD"). (R. at 30.) Of these, the Administrative Law Judge ("ALJ") determined that Plaintiff's mild intellectual developmental disorder, anxiety disorder, depression, fetal alcohol syndrome, ADHD and PTSD were severe impairments before and after she turned eighteen years old. (R. at 30, 48.)  However, the ALJ

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Acting Commissioner Kijakazi should be substituted as the defendant in this suit.

1

denied Plaintiff's application for benefits because he found that Plaintiff did not meet the criteria for disability under the Act. (R. at 53.)

On July 13, 2016, an application for disability insurance benefits and supplemental security income was filed on Plaintiff's behalf. (R. at 25.) After Plaintiff's application was denied, and after exhausting her administrative remedies, Plaintiff now seeks judicial review of the ALJ's decision, dated June 3, 2019, pursuant to 42 U.S.C. § 405(g). (R. at 9, 25, 53.)

This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[3] Plaintiff raises one argument, asserting that the ALJ failed to give proper weight to the opinions of two medical consultants. (Pl.'s Mem. Supp. Mot. Summ. J. at 7, ECF No. 27 ("Pl.'s Mem.")). For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 26) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 30) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On July 13, 2016, Plaintiff's guardian filed an application for disability insurance benefits on behalf of Plaintiff, a minor at the time of the application. (R. at 25.) The Social Security Administration denied Plaintiff's claim on February 15, 2017, and again upon reconsideration on June 28, 2017. (R. at 25.) At Plaintiff's request, the ALJ held a hearing on April 17, 2019 (the "Hearing") during which testimony was offered from Plaintiff, Plaintiff's guardian, and a

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

vocational expert. (R. at 25, 64-120.) On June 3, 2019, the ALJ issued a written opinion denying Plaintiff's disability claim. (R. at 53.) The ALJ concluded that Plaintiff did not qualify as disabled because Plaintiff is capable of performing work as it is generally performed in the national economy. (R. at 52.) On March 31, 2020, the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's decision final and subject to review by this Court. (R. at 9.) Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (R. at 9, 25, 53.)

## II. STANDARD OF REVIEW

This Court upholds an ALJ's Social Security disability determination if: (1) the ALJ applied the correct legal standards; and (2) substantial evidence supports the ALJ's factual findings. *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson*, 810 F.3d at 207 (internal quotation marks omitted). Substantial evidence thus requires more than a scintilla of evidence, but less than a preponderance of the evidence. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice" where the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). The record should

include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. *See Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989). If the reviewing court has no way of evaluating the basis for the ALJ's decision, then "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed. 2d 643 (1985).

### III. FACTUAL BACKGROUND

The ALJ considered Plaintiff's background, medical evidence, and testimony before deciding to deny Plaintiff's claim for disability benefits.

**A.  Plaintiff's Background.**

Plaintiff was born prematurely as a result of her biological mother's alcohol use during pregnancy. (R. at 179.) When Plaintiff was one year old, her biological mother lost custody of her due to Plaintiff's failure to thrive and poor nutrition. (R. at 179.) Plaintiff then lived with her father and stepmother, who were physically abusive. (R. at 186.) Plaintiff's father developed a drug and alcohol addiction, rarely fed or cared for the children, and attempted to sexually assault Plaintiff. (R. at 186.) At age sixteen, Plaintiff was placed in the custody of her maternal aunt, Katherine Hilsinger (the "Guardian"), who became Plaintiff's legal guardian in 2016. (R. at 99.)

At the time of the Hearing, Plaintiff was an eighteen-year-old high school student in the twelfth grade at First Colonial High School in Virginia Beach. (R. at 76.) She previously attended Mauston High School in Mauston, Wisconsin, where she had a 504 Plan that allowed her to use a calculator and receive extra time to complete assignments and tests. (R. at 483.)  Prior to attending Mauston High School, she attended Lutcher High School in Lutcher, Louisiana, where she received an individual accommodation plan to assist with the learning limitations that she experienced due to

ADD/ADHD, anxiety disorder, and fetal alcohol syndrome. (R. at 336.) Plaintiff's employment history includes working part-time as a cleaner, stocker, cashier, busser, and dog daycare attendant. (R. at 25, 34, 321-326, 555.)

    **B. Medical Evidence.**

Plaintiff reports a history of anxiety disorder, depression, fetal alcohol syndrome, ADHD, and PTSD. (R. at 30, 132, 879.) Her psychiatric records indicate that she suffers anxiety, depression, and trauma as a result of significant family dysfunction and abuse. (R. at 749-750.) She was diagnosed with a mild intellectual disability, which could hinder her learning and communication. (R. at 749.) Although she has a history of self-harm, Plaintiff was found to have no significant or suicidal ideation at the time of evaluation. (R. at 749.) She suffers from intrusive memories, nightmares, and flashbacks to abuse, particularly when around adult males. (R. at 749.) Plaintiff did not receive treatment for mental health issues until she was placed in the custody of the Guardian in 2016. (R. at 750.)

Plaintiff's cognitive ability appeared to be within the Borderline Range of Intellectual functioning as measured by her Full-Scale IQ. (R. at 750.) Her test results show that she has difficulty keeping up with peers in a wide variety of situations that require thinking and reasoning ability. (R. at 750.) Plaintiff self-isolates from social situations, rarely participates in activities, and feels little to no emotional connection to anyone. (R. at 775.) She reported feeling irritable daily and becoming angry over trivial matters. (R. at 775.) She often feels detached from others and routinely avoids all thoughts, feelings, situations, or people that remind her of past trauma. (R. at 775.) As a result, she was diagnosed with PTSD with dissociative symptoms. (R. at 775.)

### C. Plaintiff's Testimony.

At the Hearing, Plaintiff testified that she has anger problems, difficulty learning and focusing, and experienced significant social anxiety and depression (R. at 69, 79-81, 90-91.) She admitted that the Guardian frequently needed to remind her to take her medication because she often forgot. (R. at 83.)

Plaintiff testified that she had worked at a restaurant while she lived in Wisconsin, where she cleaned the porch and bathroom, washed dishes, bussed tables, and helped organize the kitchen. (R. at 71-72.) After leaving this job, Plaintiff interned at Walgreens for twelve hours per week, where she stocked shelves and interacted with customers. (R. at 73.) Plaintiff also worked at a "Doggy Day Care" where she let the dogs out of the kennels to play, pick up the waste, and clean the outdoor area. (R. at 74-75.) Additionally, Plaintiff drove herself to and from school and work. (R. at 73-74.)

Plaintiff testified that she had not gotten frustrated with a supervisor or customer and had fairly good relationships with her co-workers. (R. at 77-78.) Plaintiff admitted that she experiences anxiety at all times, which causes her to forget what she is supposed to be doing. (R. at 86.) During more severe episodes of stress and anxiety, Plaintiff's hands would shake, and she would have to calm herself down. (R. at 86.) It takes Plaintiff twenty minutes to calm down when she is at work, and up to an hour when she experiences these episodes at home. (R. at 87.)

Plaintiff also testified about her move to Virginia for her senior year of high school and that she was scheduled to graduate in June 2019. (R. at 76-77.) She testified that she was an "okay" student, although she admitted to having two failing grades at the time of the Hearing. (R. at 77.) She attributed this to her forgetfulness and failure to turn in her assignments. (R. at 77.) She stated

during the Hearing that she did not have any problems in other classes even though her teachers were not complying with Plaintiff's 504 Plan. (R. at 81-82.)

Plaintiff explained how she experienced social anxiety. (R. at 69.) For example, Plaintiff sometimes felt claustrophobic in crowded social settings and wanted to leave class. (R. at 81.) She told the ALJ that she had three friends, although she did not feel comfortable spending time with them outside of school. (R. at 78.) She admitted being social with classmates, but not during class time because she is easily distracted. (R. at 79.) She described her difficulty in concentrating during class and felt as if she did not "catch on very easily." (R. at 80.) Plaintiff experienced frustration when she took tests, and she often cried when she did not know the answers. (R. at 86-88.) She described how she felt her mind was "all over the place," and that she was not "grasping and understanding" certain concepts. (R. at 89.)

Plaintiff testified that while her teachers sometimes allowed her extra time for testing, they often forgot to extend her homework deadlines. (R. at 82, 87.) Plaintiff explained that her grades were negatively impacted as a consequence of not receiving extra help at school. (R. at 77, 82.)

The ALJ sequestered Plaintiff before hearing from the Guardian. The Guardian testified that she became Plaintiff's legal guardian in 2016. (R. at 99.) She took Plaintiff to speech therapy and mental health therapy to treat for her childhood trauma, associated developmental limitations, and fetal alcohol syndrome. (R. at 99-100.)

The Guardian testified that she hired Dr. Thomas Hayes to conduct an independent evaluation of Plaintiff's disabilities from August 25, 2017 to August 28, 2017. (R. at 95-96.) The Guardian testified about Plaintiff's physical health as a child. (R. at 99.) Plaintiff experienced severe intrauterine growth retardation, thick meconium requiring induction, and subsequent developmental limitations as a result of her biological mother drinking alcohol during pregnancy.

7

(R. at 99-101.) Plaintiff received physical therapy as a child, but she "never got the help that she needed." (R. at 100.) The Guardian believed that Plaintiff's severe fetal alcohol syndrome significantly impacted Plaintiff's cognitive abilities and capability to function independently. (R. at 99, 101.) The Guardian also testified that she does not believe Plaintiff understands her limitations, is often "scattered," and needs constant reminders to complete chores. (R. at 101, 107.)

### D. Vocational Expert's Testimony.

The ALJ examined a vocational expert, who read and listened to the testimony of Plaintiff and the Guardian regarding Plaintiff's work history. (R. at 111.) The vocational expert explained that Plaintiff's previous employment was not full-time work and she did not need to classify any of the part-time work. (R. at 111.) The ALJ questioned the vocational expert regarding hypothetical situations of a person with the same age, education, and limited exertion and duration of continuous work levels. (R. at 111-113.)

Specifically, the ALJ asked about the kind of work that would be available for an individual who can perform simple and routine tasks in a low-stress job, with only occasional decision-making required. (R. at 111.) The vocational expert listed a cafeteria attendant, stock checker, and bakery worker as examples of the kinds of jobs which meet that hypothetical criteria. She explained the number of available jobs in the national economy for a hypothetical worker with these limitations. (R. at 111-113, 116.) The ALJ then asked about the same hypothetical limitations, but with an additional requirement that the individual must have occasional interactions with coworkers and the general public. (R. at 112.) The vocational expert's answer was the same.

Finally, the ALJ asked about the available employment for an individual with these limitations in addition to being off task fifteen percent or more of the workday and/or absent two or more days

8

per month. (R. at 112.) The vocational expert testified that this would preclude all work in the national economy. (R. at 112-113.)

### IV. THE ALJ'S DECISION

Following the Hearing, the ALJ issued a written opinion on June 3, 2019, concluding that Plaintiff did not qualify as disabled and denying her benefits. (R. at 52.) The ALJ followed the five-step evaluation process established by the Act to determine whether a disability exists and the three-step sequential evaluation. (R. 25-53.); 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the five-step sequential evaluation); 20 C.F.R. § 416.924(a).

**A. Childhood Standard of Disability.**

The Act establishes a three-step sequential evaluation process to determine whether an individual under the age of eighteen is disabled. (R. at 26.) Step one requires the ALJ to determine whether the claimant has engaged in "substantial gainful activity". 20 C.F.R. § 416.924(a). If the claimant establishes that she did not engage in substantial gainful activity, the claimant must prove at the second step that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.924(c). To qualify as a severe impairment that entitles a claimant to benefits under the Act, it must cause more than a minimal effect on one's ability to function. *Id*.

If a minor claimant suffers from a severe impairment or combination of impairments, the ALJ must determine at step three whether the minor's impairment meets, medically equals, or functionally equals an impairment listed in Appendix 1, Part 404, Subpart P, and lasts, or is expected to last, for twelve months or result in death. 20 C.F.R. § 416.924(d)(1). In assessing the functional limitations caused by the impairments, the ALJ examines a minor claimant's limitations

9

in six areas of development and functioning in order to determine whether she has "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six relevant domains of functioning include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(a)(1).

Here, the ALJ concluded at step one that Plaintiff had not engaged in substantial gainful activity since the date the application was filed. (R. at 30.) Additionally, the ALJ found that while Plaintiff worked after the alleged disability onset date, it did not rise to the level of substantial gainful activity. (R. at 30.) The ALJ further found that before attaining the age of eighteen, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings. (R. at 31-32.) After examining the record, the ALJ determined that there was no marked limitation of Plaintiff within the six domains of function. (R. at 40.) Therefore, the ALJ concluded that Plaintiff was not disabled prior to attaining the age of eighteen. (R. at 48.)

**B. Adult Standard of Disability.**

The Act sets forth a five-step sequential evaluation process for determining whether an individual who has applied for social security income benefits and has attained the age of eighteen is disabled. (R. at 29-30.) Step one requires the ALJ to look at the claimant's current work activity. § 404.1520(a)(4)(i). Step two requires the ALJ to ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the claimant's medical impairments meet or equal an impairment in

the Listings.[4] § 404.1520(a)(4)(iii); *see* 20 C.F.R Pt. 404, Subpt. P, App. 1. Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most that the claimant can do despite her physical and mental limitations. §§ 404.1520(e), 404.1545(a)(1). At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

In the instant case, at step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the date the application was filed. (R. at 30.) At step two, the ALJ concluded that Plaintiff has the following severe impairments: (1) mild intellectual developmental disorder; (2) anxiety disorder; (3) depression; (4) fetal alcohol syndrome; (5) ADHD; and (6) PTSD. (R. at 30-31.) The ALJ found that these severe impairments cause more than minimal functional limitations when considered in combination. (R. at 30.)

At step three, the ALJ determined that none of Plaintiff's impairments, individually or in combination, met or equaled a disability listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A or B. (R. at 31.) Specifically, the ALJ held that Plaintiff's impairments did not meet or equal Listing 112.04, Listing 112.05[5], Listing 112.06, 112.11, 112.14, and 112.15. (R. at 31-32.)

At the Hearing, Plaintiff initially argued that she met Listing 112.05, "paragraph A" because Plaintiff has "significantly sub-average intellectual functioning." (R. at 109.) However, the ALJ

---

[4] The Listings are a regulatory appendix of "the major body systems impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity." § 404.1525 (a).
[5] Although Plaintiff initially argued this Listing, she admitted during the Hearing that Plaintiff did not meet the requisite criteria. (R. at 32.)

11

pointed out that "paragraph A" requires a "cognitive inability to function at a level required to participate in standardized tests of intellectual functioning." (R. at 109.) The ALJ noted that Plaintiff had the ability to participate in standardized testing, and therefore did not meet "paragraph A" criteria. (R. at 109.) Consequently, Plaintiff conceded that she did not meet "paragraph A" because she was capable of taking these tests, even though she is behind on her progress. (R. at 109.)

The ALJ similarly found that Plaintiff did not meet "paragraph B" criteria or "paragraph C" criteria. (R. at 31.) As to "paragraph B," the ALJ concluded that Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace, and a mild limitation for adapting or managing oneself. (R. at 31.) He explained that his findings are consistent and supported by the evidence, which indicated "no more than less than market restrictions in related areas of acquiring and using information, interacting and relating with others, attending and completing tasks, and caring for herself." (R. at 31.) Therefore, the ALJ concluded that the "paragraph B" criteria were not satisfied because Plaintiff's mental impairments did not cause at least two "marked" or one "extreme" limitation. (R. at 31.)

In considering the "paragraph C" criteria, the ALJ looked to whether the evidence showed a level of severity as described in Sections 12.04C, 12.06C, 12.15C. (R. at 31.) To meet the requisite level of severity, Plaintiff must have a "serious and persistent" mental disorder, which is supported by a medically documented history of the existence of the disorder of at least two years. (R. at 31.) The ALJ explained that there must be evidence of both: (1) ongoing treatment or a highly structured setting that diminishes the symptoms of the mental disorder; and (2) marginal adjustment, or Plaintiff's minimal capacity to adapt to changes in her environment or meet

12

demands that are not already a part of her daily life. (R. at 31.) The ALJ found that the evidence in the record failed to document the existence of these criteria. (R. at 31.)

At step four, the ALJ concluded that because Plaintiff had no past relevant work, the transferability of Plaintiff's job skills was not relevant. (R. at 51.)

At step five, the ALJ held that Plaintiff is capable of making an adjustment to available jobs that exist in the national economy. (R. at 51-52.) The ALJ agreed with the vocational expert's testimony that Plaintiff could work in jobs such as cafeteria attendant, stock checker, and bakery worker. (R. at 52.) Further, the ALJ found that Plaintiff can perform this employment as it is generally performed in the national economy. (R. at 52.) Therefore, the ALJ concluded that Plaintiff was not disabled as an adult under the Act. (R. at 52-53.)

## V. ANALYSIS

Plaintiff moves for a finding that she is entitled to benefits as a matter of law. (Pl.'s Mem.. at 7-8). In support, Plaintiff argues that the ALJ failed to give proper weight to the two consulting examiners, Dr. Peggy Dennision ("Dr. Dennison") and Dr. Thomas Hayes ("Dr. Hayes"). Defendant argues in opposition that the Commissioner's final decision should be affirmed because it is supported by substantial evidence and application of the correct legal standard. (Def.'s Mot. for Summ. J. and Br. in Sup. Thereof, ECF No. 30, ("Def.'s Mem.") at 18-19).

Plaintiff contends that the ALJ failed to follow regulatory factors when determining the weight given to the opinions of Dr. Dennison and Dr. Hayes. (Pl.'s Mem. at 7-8). Defendant contends that the ALJ properly evaluated these medical opinions in compliance with the applicable regulations. (Def.'s Mem. at 18-19).

During the sequential analysis, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert

evaluations. 20 C.F.R. §§ 404.1512, 404.1527, 416.912, 416.927. When the record contains several medical opinions from a variety of providers that are consistent with each other, then the ALJ makes a determination based on that evidence. §§ 404.1527(c), 416.927(c). If, however, the medical opinions are inconsistent internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. §§ 404.1527(c)(2)-(6), (d), 416.927(c)(2)-(6), (d).

Under the regulations, only an "acceptable medical source" may be considered a treating source that offers an opinion entitled to controlling weight. SSR 06-3p.[6] Acceptable medical sources include licensed physicians, licensed or certified psychologists and certain other specialists, depending on the claimed disability. §§ 404.1513(a), 404.1527(a), 416.913(a), 416.927(a). The regulations also provide for the consideration of opinions from "other sources," including nurse-practitioners, physician's assistants, or therapists. SSR 06-03p; §§ 404.1527(f), 416.927(f).[7] Under the applicable regulations and caselaw, a treating source's opinion must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. §§ 404.1527(c)(2), 416.927(c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig*, 76

---

[6] Effective March 27, 2017, the SSA rescinded SSR 96-2p and 06-3p, instead incorporating some of the Rulings' policies into 20 C.F.R. §§ 404.1527(f), 416.927(f). 82 Fed. Reg. 5844-01, at 5844-45, 5854-55 (Jan. 18, 2017). Plaintiff filed her claim(s) on July 13, 2016, before this regulation took effect. (R. at 25.) The Agency does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the Agency the general power to make rules, but not granting retroactive rulemaking power). Because the regulation does not have retroactive effect, SSR 06-03p applies to Plaintiff's claim(s).

[7] The regulations detail that "other sources" include medical sources that are not considered "acceptable medical sources" under 20 C.F.R. §§ 404.1527(f) and 416.927(f). The given examples are a non-exhaustive list. SSR 06-03p.

F.3d at 590; SSR 96-2p. Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion is inconsistent with other evidence or when it is not otherwise well-supported. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistences.'" *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should be left untouched unless the ALJ failed to give a sufficient reason for the weight afforded. *Id.*

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. §§ 404.1527(c), 416.927(c). However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine whether a claimant is disabled as that term is defined under the Act. §§ 404.1527(d)(1), 416.927(d)(1). Although the regulations explicitly apply these enumerated factors only to treating sources, those same factors may be applied in evaluating opinion evidence from "other sources." SSR 06-03p.

### A. The ALJ sufficiently explained the weight given to Dr. Hayes' opinion.

The ALJ reviewed Dr. Hayes' opinion and gave it little weight because: (1) the Guardian hired and paid him to produce the report; (2) Dr. Hayes' only exposure to Plaintiff was a four-day

evaluation; (3) it is inconsistent with Plaintiff's ongoing therapy notes from the same time period; and (4) it does not sufficiently support Plaintiff's claims. (R. at 37-38.)

The ALJ noted that Dr. Hayes appeared to have been hired "to generate evidence for the current appeal[.]" (R. at 37.) The ALJ also noticed inconsistencies in Dr. Hayes' report that called into question the extent and severity of some of Plaintiff's claims. (R. at 38.) For example, Plaintiff claims that she "blames 'forgetting' quite often," but the test results of her working memory suggested that she should be able to remember most daily events and routine. (R. at 38, 181-182.) Dr. Hayes ascribed Plaintiff's self-described forgetfulness as a "manifestation of a profound level of anxiety, and fear of scrutiny." (R. at 181.)

Dr. Hayes' testing and conclusion do not sufficiently support Plaintiff's claims that her severe impairments significantly limit her ability to maintain employment. (R. at 181.) For instance, Dr. Hayes noted that testing indicated only mild attention deficit disorder and opined that it was properly treated with medication. (R. at 182.) However, this is in contrast to Plaintiff's self-reports of significantly greater symptoms and that medication did not seem to be helping her. (R. at 38, 91.) Dr. Hayes concluded that Plaintiff's problems are only "mild to moderate," which does not support Plaintiff's claims. (R. at 38, 181.)

Therapy notes, dated two days after Dr. Hayes' examination, indicated Plaintiff was neat and well-groomed and was exhibiting: (1) good attention; (2) normal and linear thought processes; (3) an intact memory; and (4) age-appropriate judgment and insight. (R. at 744.) Likewise, therapy notes from a few weeks later (i.e., September 13, 2017 and September 20, 2017) state that Plaintiff's "[a]ttention is good. Memory is intact. Insight and judgment are age appropriate." (R. at 742-43.) The Court finds that the ALJ: (1) properly articulated his reasoning for the weight given to Dr. Hayes' opinion; and (2) did not commit error when he weighed Dr. Hayes' opinion.

**B. The ALJ sufficiently explained the weight given to Dr. Dennison's opinion.**

Plaintiff argues the ALJ did not properly articulate the grounds of his rejection of Dr. Dennison's opinion. (Pl.'s Mem. at 12). Plaintiff contends that Dr. Dennison is an impartial medical witness because she was hired by the state agency. (Pl.'s Mem. at 12). Defendant contends that the ALJ evaluated Plaintiff's subjective complaints in accordance with controlling agency regulations, adequately explained his reasoning, and provided substantial evidence supporting his analysis. (Def's Mem. at 12-13).

First, the ALJ examined Dr. Dennison's relationship with Plaintiff, specifically its length, frequency, and nature. (R. at 37.) Dr. Dennison was hired to evaluate Plaintiff and report the results to the Disability Determination Bureau. (R. 616.) She examined Plaintiff once on January 19, 2017. (R. at 37.) Prior to her evaluation, Dr. Dennison reviewed Dr. Ann Hoffman's Well Child Evaluation from July 18, 2016 and a Correction to [Plaintiff's] Transfer Records, dated October 24, 2016, completed by the Guardian. (R. at 616.) Dr. Dennison had no other information about Plaintiff's history or treatment. (R. at 616.)

Second, the ALJ reviewed the supportability of the opinion based on the record and the consistency of Dr. Dennison's opinion with the medical record. (R. at 37.) A series of tests revealed that Plaintiff had a full-scale IQ of 79, was average in word reading and spelling, low in math computation, and below average in reading composite and sentence comprehension. (R. at 621-22.) Her overall thinking and reasoning abilities "exceed those of only 8% of individuals her age." (R. at 622.) Her scores suggested poor concentration and attention, and a "significantly reduced level of mental flexibility." (R. at 621.) Dr. Dennison noted that Plaintiff often stated that she did not know the answers to questions during the test, shrugged her shoulders, asked to have directions repeated, and sighed in frustration. (R. at 621.) This is consistent with Plaintiff's interview with

17

Dr. Dennison, in which she reported that she had to ask for questions to be repeated and at times appeared frustrated during testing. (R. at 619.)

However, Dr. Dennison noted that Plaintiff's thought processes were "mostly adequate and intact." (R. at 620.) She recorded that Plaintiff showed "adequate ability to maintain concentration on simple sequential tasks," and "has some degree of insight into her own condition." (R. at 620.) Despite this, Dr. Dennison concluded that Plaintiff had a poor prognosis and needed employment that would not involve using conceptual skills. (R. at 37, 623.) Dr. Dennison also opined that Plaintiff would need support and encouragement as well as assistance managing her social security income benefits if she should receive them. (R. at 37, 623.)

The ALJ gave Dr. Dennison's opinions "limited weight" because he found her opinion regarding Plaintiff's level of support and encouragement "vague and unsupported in the evidence." (R. at 37.) The ALJ articulated how Plaintiff's medical providers reported that she was showing stability and improvement, and by January 4, 2017, she was noted to be passing all her classes. (R. at 36, 639.) Plaintiff's treatment notes from a January 4, 2017 visit to Dr. Ann Hoffman also note that she was able to concentrate in school, despite struggling to remember to take her medicine each day. (R. at 639.) While Dr. Dennison also noted that Plaintiff admitted memory problems, she found that Plaintiff had mostly adequate and intact thought processes and "showed adequate ability to maintain concentration on simple sequential tasks[.]" (R. at 620.)

The ALJ sufficiently articulated why he gave Dr. Dennison's opinion limited weight. He found it significant that Plaintiff and the Guardian gave substantially different statements to Dr. Hoffman, her regular treating physician, and to Dr. Dennison, her one-time hired consultant examiner, during the same relative time period. (R. at 36-37.) The ALJ found that Dr. Dennison's opinion was inconsistent with her own examination findings and with the other evidence in the record. (R. at

18

37.) He noted that Plaintiff failed to qualify for special education services during the 2016-2017 school year because her teachers did not have concerns for her academic and behavioral performance, and reported that she "worked very hard, was outgoing, and was able to participate well in discussions." (R. at 470.) Plaintiff contends that the ALJ "cherry-picked" which evidence in the record to support his finding; however, there is "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Rather, the ALJ has the exclusive responsibility to evaluate all the medical opinions and judge whether they are supported by and consistent with the rest of the record. 20 C.F.R. § 416.927. Indeed, the *Craig* analysis requires the ALJ to analyze a number of factors when determining the weight afforded to a medical opinion, including the degree to which the opinion is supported by relevant medical evidence and consistent with the record as a whole. 76 F.3d, 585, 590 (4th Cir. 1996).

In this case, the ALJ followed the steps articulated in §§ 404.1527(c), 416.927(c) when determining the weight of Dr. Dennison's opinion. He afforded Dr. Dennison's opinion less weight because of her limited and brief treating relationship with Plaintiff as well as the inconsistencies in the clinical evidence. Therefore, this Court finds that the ALJ did not err in conferring limited weight to Dr. Dennison's opinion.

## VI. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 26) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 30) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge Lauck and to all counsel of record.

NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                            /s/ MRC
                                      Mark R. Colombell
                                      United States Magistrate Judge

Richmond, Virginia
Date: October 12, 2021